UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JAMES D.E. RIPPY, <br><br> Petitioner, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | CAUSE NO. 3:25cv666 DRL <br> 3:22cr37 DRL |

OPINION AND ORDER

With the aid of counsel, James Rippy filed a petition to vacate his sentence under 28 U.S.C. § 2255. He asserts ineffective assistance of trial counsel. After carefully reviewing the petition and record, the court denies the petition and denies a certificate of appealability.

BACKGROUND

For over four years, Mr. Rippy took sexually explicit videos and photographs of a minor victim under his guardianship as he groomed the victim, supplied the victim with alcohol and marijuana, and sexually abused him. When alerted, law enforcement seized and searched Mr. Rippy's electronic devices, uncovering 97 videos and 1,134 images of child sexual abuse material stored on his devices (seven cellphones and four iPads). Most depicted his sexual assaulting of the minor, and approximately 58 other media files (produced by someone else) concerned at least three other victims, including a toddler.

On March 10, 2023, Mr. Rippy agreed to plead guilty to one count of producing child sexual abuse material pursuant to a plea agreement. *See* 18 U.S.C. § 2251(a). He pleaded guilty a week later. For sentencing, the presentence report (revised and filed June 7, 2023) recommended

final offense level 40 and criminal history category II. That yielded a guideline range of 324 to 360 months (as capped by the statutory maximum of 30 years).

Before sentencing, Mr. Rippy objected to U.S.S.G. § 4B1.5(b)'s five-level enhancement for engaging in a pattern of activity involving prohibited sexual conduct. He said it double-counted the same prohibited conduct that was the subject of another two-level enhancement under U.S.S.G. § 2G2.1(b)(2) for committing a sexual act (oral sex). The court overruled the objection for two reasons. First, neither § 2G2.1(b)(2) nor § 4B1.5(b) prohibited applying both adjustments, and double-counting is generally permissible unless expressly prohibited. *See United States v. Tinsley*, 62 F.4th 376, 390 (7th Cir. 2023). Second, no double-counting occurred when the one guideline concerned just the singular sexual act whereas the other guideline concerned the repeated pattern of impermissible sexual conduct over four years.

After weighing the 18 U.S.C. § 3553(a) factors, the court sentenced Mr. Rippy to 348 months (29 years) of imprisonment. The court of appeals dismissed his appeal on May 6, 2024. On August 1, 2025, Mr. Rippy timely filed this § 2255 petition to vacate his sentence for ineffective assistance of trial counsel. He says he would not have pleaded guilty but for his trial counsel's failure to advise him that he would be subject to U.S.S.G. § 4B1.5(b)'s five-level enhancement under the sentencing guidelines.

## STANDARD

In extraordinary situations, the court may vacate, set aside, or correct a prisoner's sentence. 28 U.S.C. § 2255(a); *Hays v. United States*, 397 F.3d 564, 566-67 (7th Cir. 2005). The writ of *habeas corpus* is secured by the United States Constitution: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const., Art. I, § 9, cl. 2. Historically, criminal defendants subject to a final

conviction were entitled to *habeas corpus* relief only if the court that rendered the judgment lacked jurisdiction. *Ex parte Watkins*, 28 U.S. 193, 202 (1830). The writ has since been expanded to provide prisoners relief from various violations of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2255(a); *Danforth v. Minnesota*, 552 U.S. 264, 272 (2008); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). It is not a substitute for direct appeal. *Doe v. United States*, 51 F.3d 693, 698 (7th Cir. 1995).

When reviewing a § 2255 petition, the court examines the petition and the entire record. The court will hold an evidentiary hearing when the petitioner alleges facts that, if proven, would entitle him to relief. *Torres-Chavez v. United States*, 828 F.3d 582, 586 (7th Cir. 2016); *see also* 28 U.S.C. § 2255(b). Allegations that prove merely "vague, conclusory, or palpably incredible" rather than detailed and specific will not suffice. *Machibroda v. United States*, 368 U.S. 487, 495 (1962). Likewise, when the petition and records conclusively show that the petitioner is not entitled to relief, the court need not hold an evidentiary hearing. *Boulb v. United States*, 818 F.3d 334, 339 (7th Cir. 2016). That is the case here.

DISCUSSION

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (collecting cases). To show a violation of this right, a defendant must establish that (1) his counsel's representation "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "A defendant's failure to satisfy either prong is fatal to his claim." *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993).

3

The law "presume[s] that counsel [was] effective, and a defendant bears a heavy burden in making out a winning claim based on ineffective assistance of counsel." *United States v. Farr*, 297 F.3d 651, 658 (7th Cir. 2002). An attorney's representation "need not be perfect, indeed not even very good, to be constitutionally adequate." *Delatorre v. United States*, 847 F.3d 837, 845 (7th Cir. 2017) (quotation omitted). The "proof of prejudice must be matched to the circumstances of the deficient performance and the relief sought." *Brock-Miller v. United States*, 887 F.3d 298, 312 (7th Cir. 2018).

This same two-part test applies to "challenges to guilty pleas based on ineffective assistance of counsel," *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), though in a refined way, *United States v. Smith*, 989 F.3d 575, 581 (7th Cir. 2021). To assess counsel's effectiveness at the plea stage, the performance prong remains largely unchanged: the petitioner "must allege that he entered the plea agreement based on advice of counsel that fell below constitutional standards." *Hurlow v. United States*, 726 F.3d 958, 966-67 (7th Cir. 2013). "[W]hen a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee v. United States*, 582 U.S. 357, 364-65 (2017) (quotations omitted); *see also Hill*, 474 U.S. at 59. To meet this burden, a defendant has to offer more than *post hoc* assertions "about how he would have pleaded but for his attorney's deficiencies." *Lee*, 582 U.S. at 369. Courts "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.*; *United States v. Karagianis*, 142 F.4th 980, 987 (7th Cir. 2025).

Mr. Rippy argues that his trial counsel was ineffective because he failed to advise him of a possible five-level enhancement under § 4B1.5(b) before he pleaded guilty. He says his counsel's

4

failure to recognize that a § 4B1.5(b) enhancement might apply and alert him before pleading guilty fell below the standard for constitutionally competent counsel. In response, the government chooses to focus solely on the prejudice prong and declines the invitation to argue against deficient performance. *See Strickland*, 466 U.S. at 697 (a "court need not determine whether counsel's performance was deficient before examining the prejudice suffered").

In his petition and in his briefing, Mr. Rippy argues that he would have proceeded to trial had trial counsel told him about the possibility of § 4B1.5(b)'s enhancement. He explains that the enhancement raised the recommended guideline range dramatically (by over 11 years at the low-end); and, at his age (40 years old at the time of sentencing), this type of enhancement would have been "crucial" information in deciding whether to plead guilty. The government counters that this proffer fails to provide any contemporaneous or post-sentencing evidence to support his claim that he would not have plead guilty, and that his plea agreement and plea colloquy rebut his current assertions of prejudice.

Notably neither the petition nor any other declaration has been supported by such a statement by Mr. Rippy under oath. The record offers no evidence before or contemporaneous to the plea, much less evidence later, that he would not have pleaded guilty had he known about a sentencing guideline that produced a higher advisory range. After his guilty plea, the enhancement was precipitated by a later-than-usual government objection to the original presentence report, which caused its revision; and it certainly altered the guideline range, even if advisory and even if but a starting point in the sentencing process. Trial counsel's remark at sentencing tends to show that some level of post-plea research crystallized the likely application of this enhancement, though this tends to speak more to his performance than Mr. Rippy's prejudice. *See, e.g., Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009).

Returning to the plea agreement, Mr. Rippy acknowledged that a violation of 18 U.S.C. § 2251(a) carries with it a "mandatory minimum term of imprisonment of 15 years up to a maximum of 30 years" [40 ¶ 9(c)]. He acknowledged that the court would use the sentencing guidelines to calculate a range for sentencing but that the guidelines were "advisory only, and that the specific sentence to be imposed upon [him] will be determined by the judge" after considering the relevant information [*id.* ¶ 9(f)].

At the plea hearing, the court confirmed Mr. Rippy's understanding of the plea agreement [68 Tr. 9-11]. The court explained that, though the guidelines would play a role in deciding his sentence, the court need not pick a sentence within that recommended range [*id.* Tr. 16-17]. The court explained to him how sentencing works and informed him that "no one can say for sure what sentence the court will reach" and that the court "may reach a sentence that [he] discussed with [his counsel] as a possibility or [the court] may reach a sentence that [he has] not discussed with [his] counsel as a possibility. And merely because the court were to reach a sentence that [he] didn't expect or one that [he] didn't discuss with [his] counsel as a possibility would not give [him] the right to withdraw from [his] plea or [his] plea agreement because the [court] made that decision" [*id.* Tr. 17-18]. Mr. Rippy acknowledged the potential penalties set by statute, including that the court could sentence him to a maximum 30 years [*id.* Tr. 14-15]. The court explained that his sentence could be longer than he expected [*id.* Tr. 19, 21]. He testified under oath that no one had made any promises or predictions to him as to what sentence he would receive in the case [*id.* Tr. 21]. Mr. Rippy testified that he understood these concerns (and many others) and still wanted to plead guilty [*id.* Tr. 17-18, 23].

The plea agreement and plea colloquy provide the only real contemporaneous evidence as to whether Mr. Rippy would still have pleaded guilty knowing that his sentence could variably

6

run the gamut of 15-30 years, that his sentence might be longer than he expected, that his sentence might exceed any possibility that he had discussed with counsel, and that he was proceeding without any promises or predictions as to what his sentence might be. On this habeas record, the court doesn't even have a sworn statement to counter or couch these prior sworn statements (not even in reply after this point was raised by the government), nor any history of plea negotiations, nor any evidence that age and a likelihood of a lengthier sentence would rejuggle the rationale for pursuing a guilty plea, even if it has something by way of counsel's remarks at sentencing to appreciate that one assumption may have been made. *See, e.g., Julian v. Bartley*, 495 F.3d 487, 499 (7th Cir. 2007) (finding prejudice when petitioner stated under oath he would not have gone to trial but for the miscalculation, when he altered course just after receiving the erroneous information, and when the miscalculation grossly understated the risk of going to trial) (citing *Moore v. Bryant*, 348 F.3d 238, 242-243 (7th Cir. 2003)).

Instead, in reply, Mr. Rippy argues that the statements he made during the plea hearing were the product of being misinformed by his trial counsel because he didn't know that § 4B1.5(b) applied to his guideline calculation. Though certain statements made at a plea hearing may be impacted by a counsel's constitutionally ineffective actions, *Hurlow*, 726 F.3d at 967, a court's colloquy can "ameliorate the adverse impact of his counsel's misinformation," *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010) (quoting *Moore*, 348 F.3d at 243)).

That is what happened here, when the court advised him of the mandatory minimum and maximum sentences authorized by statute, that the sentencing guidelines were advisory, that the court may reach a sentence that he hadn't discussed with his counsel as a possibility, and that he wished to proceed without a firm prediction as to what sentence the court might reach once it had all the information it needed to evaluate the guidelines and to weigh the § 3553(a) factors.

Without more, the court is entitled to credit Mr. Rippy's sworn statements from the plea hearing over after-the-fact unsworn arguments asserted in his § 2255 petition today. *United States v. Patterson*, 576 F.3d 431, 437 (7th Cir. 2009). Having testified that he understood that the court might impose a sentence that he didn't discuss with his attorney as a possibility, he "cannot now be heard to complain that he would not have pled guilty if he had known his sentence would be more severe than his lawyer predicted." *Bethel v. United States*, 458 F.3d 711, 718 (7th Cir. 2006).

Mr. Rippy relies heavily on *Moore* (discussed in *Julian* above) to support his argument that he was prejudiced by counsel's failure to advise him of the enhancement. He says this is precisely the type of information "likely to impact a plea decision." *Moore*, 348 F.3d at 243-44. That can be true, and there may have been something of that here, but this petition offers more a conclusion than a record on which this could be said to be true here.

And this case is truly different than *Moore* (and even *Julian*). Mr. Rippy relies on *Moore* to underscore the size of the margin between his guideline range with and without the § 4B1.5(b) enhancement, arguing this difference alone tends to make trial counsel's error prejudicial. But *Moore* involved counsel convincing a reluctant defendant to plead guilty at the last minute after misadvising him that the statutory maximum, if convicted at trial, was much longer than if he pleaded guilty. *Id.* at 242-43. Here, whether Mr. Rippy pleaded guilty or not, he always knew the accurate maximum statutory prison term, both from his plea agreement and the plea colloquy, if not sooner. The miscalculation in *Moore* doubled the maximum sentence, whereas Mr. Rippy's maximum sentence of 30 years never changed, regardless of the enhancement.

In addition, in *Moore*, the record supported a finding that the defendant would not have pleaded guilty but for his counsel's erroneous advice (indeed, the simple failure to read the governing statute). But there was also more. For example, the defendant in *Moore* "maintained

8

his innocence and refused a guilty plea" and, shortly after changing his plea to guilty, moved to withdraw it. *Id.* at 242. Mr. Rippy hasn't provided the court with any similar contemporaneous evidence, sworn or not, that would support a revisionary lookback. Instead, Mr. Rippy's "broad and repeated concessions that he understood his sentence could be more severe than predicted and that he was not relying on a particular sentence in signing the plea agreement and pleading guilty" contradicts his assertions that the application of § 4B1.5's enhancement would have been a decisive factor in his decision to plead guilty. *Bethel*, 458 F.3d at 719.

Accordingly, this petition begins and ends with little more than a conclusory perspective that Mr. Rippy would not have pleaded guilty but for this information about the enhancement— a perspective not borne out by any real features of the record. He fails to offer facts that, if proven, would entitle him to relief. As such, no hearing is necessary, and his petition is denied. *See Anderson v. United States*, 981 F.3d 565, 578 (7th Cir. 2020); *Martin v. United States*, 789 F.3d 703, 706 (7th Cir. 2015).

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the court must also consider whether to grant or deny a certificate of appealability. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules Governing Section 2255 Cases. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations omitted). "Where a plain procedural bar is present and the district court is correct to invoke it to

9

dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* Based on the assertions Mr. Rippy has made in this petition, including assertions that contradict the record before the court, reasonable jurists could not debate the conclusions today. The court thus denies a certificate of appealability.

## CONCLUSION

The court DENIES the petition to vacate under 28 U.S.C. § 2255 [74] and DENIES a certificate of appealability. This order terminates the civil case [3:25cv666].

SO ORDERED.

January 30, 2026                                   *s/ Damon R. Leichty*
                                                   Judge, United States District Court

10